THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES L. MILLS, Appellant.

Fourth Department, March 27, 1969.

*Sterling L. Weaver* and *Sue S. Stern* for appellant.

*John C. Little, Jr., District Attorney* (*Howard R. Relin* of counsel), for respondent.

MARSH, J. Following a jury trial of an indictment charging the defendant in the first count with assault second degree in that he inflicted upon a 23-year-old female grievous bodily harm and in the second count with assault second degree in that he assaulted her with intent to commit rape first degree, defendant was found guilty under the first count and not guilty under the second count and thereafter sentenced as a second felony offender.

On this appeal from the judgment of conviction the defendant asserts that the trial court erred in not instructing the jury on

the need for corroboration of the female's testimony as to a consummated rape in that rape was originally alleged in the complainant's affidavit given the police and in her testimony before the Grand Jury and that the indictment should have been dismissed because the record does not contain sufficient corroboration of complainant's testimony. The defendant further urges that the court erred in not granting a motion for the suppression of evidence obtained as the result of a search which violated the Fourth and Fourteenth Amendments to the United States Constitution.

On the trial, complainant testified that on June 16, 1967 about 12:15 A.M. on St. Paul Street, near Central Avenue, Rochester, a car forced her's into the curb, causing her tire to go flat. Three men in the other car stopped and after assisting in the replacement of the flat tire assaulted her. Due to the pain of injuries suffered during the alleged assault she could not say whether the defendant had had intercourse with her.

On cross-examination defendant's counsel was given her complete Grand Jury testimony. The only Grand Jury testimony available in the record is so much of hers as was read into the record during her cross-examination. In her Grand Jury testimony she stated that the defendant had intercourse with her after she was injured by an accomplice of defendant. She also acknowledged signing an affidavit shortly after the assault in which she said the defendant performed an act of sexual intercourse with her during the period of the alleged assault.

A gynecologist testified from hospital records that when admitted to the hospital the victim had blood on her legs and feet, and black and blue marks on her shoulder, back, and left forearm, but that there was no evidence of external lacerations or trauma about the introitus, the vagina was without lesions, and there was no sperm in it.

No claim is made by the defendant that the evidence submitted on the trial was insufficient to warrant the jury's verdict, and it would appear that the testimony of the complainant supported by the medical proof as well as the other corroborating evidence was ample to uphold the verdict on the assault charge. It is equally clear that if section 2013 of the Penal Law requiring corroboration of the testimony of the female as to all the essential elements of rape in a rape prosecution is applicable to the charge of which defendant was convicted, no adequate corroboration was presented here and the indictment would have to be dismissed.

None of the cases extending the corroboration rule beyond the provisions of section 2013 of the Penal Law would appear to apply to the situation presented here. At no time during the trial did the complainant testify to a consummated rape, and she repeatedly asserted that her condition at the time of the assault was such that she could not say that there had been a consummated rape. We do have presented the anomalous situation referred to in Judge Scileppi's dissenting opinion in *People* v. *Radunovic* (21 N Y 2d 186, 193) where he stated that the effect of the holding of the majority was to bring about a result that "one who makes a sexual attack on a woman can be convicted without corroboration if he falls short of satisfying his lust, but not if he succeeds."

That the complainant in her affidavit upon which the original charge of rape was laid in City Court stated that the defendant had engaged in sexual intercourse with her and that she later, at least on one occasion, testified to the same effect before the Grand Jury may be given significance on the issue of her credibility but adds nothing factual to her testimony on the trial.

Nor are we concerned here with the issue of whether complainant's testimony as to rape was corroborated before the Grand Jury. Unlike *People* v. *Sigismondi* (21 N Y 2d 186) upon which defendant relies, no motion was made here to inspect the Grand Jury minutes and dismiss the indictment. We do not have the Grand Jury minutes before us, and know only of that portion of the complainant's testimony which was used by defendant's counsel on her cross-examination. Whatever defendant may now assert to be a deficiency of proof before the Grand Jury, he has lost his right to challenge the indictment by not moving before judgment. (*People* v. *Nitzberg,* 289 N. Y. 523.)

We would conclude that the trial court did not err in not charging the jury that corroboration of the female's testimony was required as to the existence of a consummated rape and that the absence of such corroboration does not require the dismissal of the indictment.

The second point urged by defendant is that the admission into evidence of unconstitutionally seized property was not harmless error and requires reversal. The particular evidence referred to was a pair of blood stained pants and a pair of shoes both seized at defendant's apartment at the time of his arrest and which were the object of a motion to suppress made by defendant prior to trial pursuant to section 813-c of the Code of Criminal Procedure. Following a hearing the court

denied defendant's motion and the evidence was received on the trial.

On the hearing the arresting officers testified that following a complaint of a girl that she had been molested and raped, they went to defendant's apartment to arrest him. With them were two prisoners, Lantz and Bushaw, who had been arrested in connection with the same charge. When they arrived Lantz knocked and the defendant answered " Who is it? ", Lantz said " Let me in ". The defendant said " Who is with you? " and in answer Lantz replied " Leave me in, I got to go to the John ". The door opened and they all walked in. One of the officers told the defendant he was under arrest and to get his clothes on. Prior to going to the apartment the other defendants had implicated the defendant Mills, and the girl had involved three participants. They went into the bedroom with the defendant and saw his clothing. As the clothes were shaken down for weapons they saw bloodstains on the pants and noticed the shoes were wet. One of the officers picked up both the pants and the shoes and then had photos taken of them.

As pointed out in *People* v. *Loria* (10 N Y 2d 368) the Fourth Amendment condemns only those searches and seizures which are unreasonable. (*Harris* v. *United States*, 331 U. S. 145, 150.) A search is reasonable if conducted pursuant to a legal search warrant, by consent or incident to a lawful arrest.

Here the detectives' entry and search was not authorized by a search warrant, nor can it be said to have been consensual in view of the defendant's ignorance of the officers' presence when he permitted access to Lantz.

Relevant to the question of whether the search was incident to a lawful arrest are the provisions of section 178 of the Code of Criminal Procedure: " To make an arrest, as provided in the last section, the officer may break open an outer or inner door or window of a building, if, after notice of his office and purpose, he be refused admittance."

Here admittedly no notice of the officers' office and purpose was given before the entry. As pointed out in *People* v. *McIlwain* (28 A D 2d 711) noncompliance with the statute may be excused on a showing of exigent circumstances. In that case it appeared that the officer entered an apartment without giving " notice of his office and purpose " to make a narcotics arrest when he heard " a rustling about " or " moving about " within the apartment and heard a toilet flush. The court held the factual showing required a finding that vital evidence was about to be destroyed and the arrest would thus be

frustrated, thus establishing exigent circumstances excusing noncompliance with the statute and validating the arrest. (See *Ker* v. *California,* 374 U. S. 23; Code Crim. Pro., § 799.)

In *People* v. *Gatti* (29 A D 2d 617) we held that a fire in a building observed by officers made their entry to investigate lawful, and once the lawful entry was effectuated they were privileged to seize whatever evidence of crime was within their view.

Here however, no showing is made of any emergency or exigency such as expressed in section 799 of the Code of Criminal Procedure which would excuse noncompliance with section 178.

In *People* v. *Gallmon* (19 N Y 2d 389) an entry by key furnished by a building superintendent and a narcotics arrest was held to be lawful and the provisions of section 178 not applicable where the police were called for assistance to investigate a disturbance in an apartment building. The majority of the court held that the officer did not go to the premises to make an arrest, but pursuant to his obligation to assist people in distress, and that therefore section 178 did not apply. In his dissenting opinion, concurred in by Judges VAN VOORHIS and KEATING, Chief Judge FULD made the statement that the court recognizes that section 178 if applicable would have required the police to announce their authority and purpose and that their failure to do so would render the arrest and seizures illegal. Here the entry, unlike *Gallmon,* was to make an arrest, and section 178 would be clearly applicable. The search not being incident to lawful arrest, the seizure of the pants and shoes must be considered in violation of the Fourth and Fourteenth Amendments.

It would not appear, however, that the admission of the pants and shoes of the defendant in evidence should be considered reversible error. The test of whether a Federal constitutional error can be held harmless is set out in *Fahy* v. *Connecticut* (375 U. S. 85, 86–87): ''The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.'' Also in *Chapman* v. *California* (386 U. S. 18, 24): '' The court must be able to declare a belief that it was harmless beyond a reasonable doubt.''

Applying such a test it would not appear that the evidence of the pants and shoes added anything to the People's case that might have contributed to the conviction.

The shoes were wet, which would establish that defendant was recently out in the night, but immediately after his arrest the

defendant admitted being present at all the places the prosecution claimed he was during the evening. As to the pants with the bloodstains, the defendant likewise in his statement, later enlarged upon in his trial testimony, admitted being in an intimate embrace with the complainant in the front seat of a car when an alleged accomplice attacked her and tore her clothes off, causing her injury and bleeding. The pants only confirmed his immediate presence there, which he readily admitted in his statement and on the trial.

We conclude that there was no reasonable possibility that the evidence illegally seized and improperly admitted contributed to the conviction, and that the failure of the court to suppress it was harmless error.

The judgment of conviction should be affirmed.

GOLDMAN, P. J., WITMER, MOULE and BASTOW, JJ., concur.

Judgment unanimously affirmed.